**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| AIRBORNE SYSTEMS NORTH AMERICA OF NJ INC., | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 6:26-cv-1520 |
| COMPLETE PARACHUTE SOLUTIONS, INC. and UNINSURED UNITED PARACHUTE TECHNOLOGIES, LLC, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Airborne Systems North America of NJ Inc. ("Airborne" or "Plaintiff"), by and through its attorneys, hereby brings this Complaint for patent infringement against Defendants Complete Parachute Solutions, Inc. ("CPS") and Uninsured United Parachute Technologies, LLC ("UPT") (collectively "Defendants") and alleges as follows. The allegations herein are made based on personal knowledge as to Airborne with respect to its own actions and upon information and belief as to all others.

**NATURE OF THE ACTION**

1.      This is a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. and for such other relief as the Court deems

1

just and proper. Airborne's claims are based on Defendants' infringement of U.S. Patent No. 8,899,526 ("the '526 Patent"). A true and correct copy of the '526 Patent is attached hereto as **Exhibit A**.

**THE PARTIES**

2.     Plaintiff Airborne Systems North America of NJ Inc. is a company organized and existing under the laws of New Jersey and has a principal place of business at 5800 Magnolia Avenue, Pennsauken, New Jersey 08109.

3.     Upon information and belief, Defendant Uninsured United Parachute Technologies, LLC is a limited liability company organized and existing under the laws of Florida and has a principal place of business at 1645 Lexington Avenue, DeLand, Florida. 32724.

4.     Upon information and belief, Defendant Uninsured United Parachute Technologies, LLC may be served through its registered agent, FELDMAN, ESQ., ROBERT L, 825 Ballough Rd, Suite 410, Daytona Beach, FL 32114.

5.     Upon information and belief, Defendant Complete Parachute Solutions, Inc. is a company organized and existing under the laws of Florida and has a principal place of business at 1326 E. International Speedway Blvd., Suite 7, Deland, Florida 32724.

6.     Upon information and belief, Defendant Complete Parachute Solutions, Inc. may be served through its registered agent, FELDMAN, ROBERT

2

L, Esq. c/o Robert Feldman, Coquina Law Group, P.A., 825 Ballough Rd, Suite 410, Daytona Beach, Florida 32114.

7.     Upon information and belief, Defendants UPT and CPS are related entities that are each engaged in the business of selling parachutes and related products, including the infringing products at issue.

8.     Upon information and belief, Defendant UPT co-owns Defendant CPS with Performance Designs and Sun Path Products. *See, e.g.*, https://www.cpsworld.com/about/ (last visited July 9, 2026) (CPS is "[b]uilt from a consortium of world-class parachute manufacturing companies, United Parachute Technologies, Performance Designs and Sun Path Products…").

9.     Upon information and belief, Defendant UPT and Defendant CPS share common officers and directors. For example, William (Bill) Booth is listed as an Officer/Director on the 2026 Florida Profit Corporation Annual Report of both Defendant UPT and Defendant CPS.

10.     Upon information and belief, Defendant UPT supplies parachute harness and container systems to Defendant CPS, including the weight distribution system used in the accused products described below.

## JURISDICTION AND VENUE

11.     This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq.*

12.    This Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*

13.    This Court has personal jurisdiction over CPS because it is incorporated in Florida and has its principal place of business in Florida and in this District. On information and belief, CPS has transacted and is continuing to transact business in this District that includes, but is not limited to, committing acts of patent infringement giving rise to this action by use and sale of products and systems that practice the subject matter claimed in the '526 Patent involved in this action.

14.    This Court has personal jurisdiction over UPT because it is incorporated in Florida and has its principal place of business in Florida and in this District. On information and belief, CPS has transacted and is continuing to transact business in this District that includes, but is not limited to, committing acts of patent infringement giving rise to this action by use and sale of products and systems that practice the subject matter claimed in the '526 Patent involved in this action.

15.    Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendants reside in Florida and in this District. On information and belief,

4

Defendants have regular and established places of business in this District and have committed acts of infringement in this District.

16.    Joinder of Defendants UPT and CPS in this action is appropriate under 35 U.S.C. § 299.

17.    Airborne's rights to relief against Defendants UPT and CPS arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering for sale, and/or importing into the United States the same or materially similar accused products and/or accused products including the same or materially similar weight distribution systems.

18.    There are questions of fact common to Defendants UPT and CPS that will arise in the action.

## BACKGROUND

19.    Airborne is a market leader in parachute design and manufacturing. With a foundation of over 100 years in designing, developing, and fabricating parachutes, Airborne has for decades provided quality parachutes for customers across the United States.

20.    Parachutes typically include at least: (a) a harness container, which is worn by the user; and (b) a chute or canopy that deploys from the container during use.

21.    Parachutists wearing conventional parachute harness containers bear all the weight of the harness container upon a small load bearing area on the tops of his or her shoulders where the harness straps pass over the clavicle area.

22.    Airborne thus pioneered parachute harness containers with load distribution systems that distribute the weight of the harness container over a wider area across the jumper's shoulders and upper back to eliminate pressure points commonly encountered with conventional parachute harness containers and increase the jumper's comfort.

23.    For example, Airborne developed the RA-1 harness/container, which distributes the load of the parachute evenly across the jumper's shoulders and back. The RA-1 harness/container is used in various parachute systems sold by Airborne, including the RA-Series Military Parachute System. An image of the RA-Series Military Parachute System is provided below as Figure 1.



**Figure 1 (Airborne RA-Series Military Parachute System)**

24.     The '526 Patent, entitled "Parachute Harness Container with Bio-Contoured Load Distributing Vest," was duly and lawfully issued by the U.S. Patent and Trademark Office on December 2, 2014. Airborne is the current owner of all rights, title, and interest in the '526 Patent.

25.     The '526 Patent is generally directed to parachute harness containers with a bio-contoured load distributing support cradle or vest.

26.     Airborne has sought to protect its intellectual property with patents such as the '526 Patent.

27.     This patent infringement action arises because of Defendants' use, sale, and offer for sale of parachute harness containers with weight distribution systems to customers in the United States.

28.     For example, on information and belief, CPS distributes and sells weight distribution systems for use with harness containers such as the Tandem Sigma parachute system ("CPS TS System" or "Accused CPS Product") that infringe one or more claims of the '526 Patent. An image of an exemplary Accused CPS Product is provided below as Figure 2 (CPS TS System).



**Figure 2 (CPS TS System)**
(*see* https://www.cpsworld.com/wp-content/uploads/2022/11/TS-QR-FINAL.pdf)
(last visited July 9, 2026)

8

29. As shown in the exemplary images below, CPS distributes, offers for sale, and sells the Accused CPS Product on its website (https://www.cpsworld.com/).



**Figure 3**
(*see* https://www.cpsworld.com/
equipment/containers/) (last visited
July 9, 2026)



**Figure 4**
(*see* https://www.cpsworld.com/
equipment/containers/tandem-sigma/)
(last visited July 9, 2026)

30. Upon information and belief, the Accused CPS Product was also demonstrated at the 2025 PIA Symposium in Florida. Exemplary images of the Accused CPS Product are provided below as Figure 5 and Figure 6.

 

**Figure 5**                **Figure 6**

31.     Further, on information and belief, UPT distributes and sells weight distribution systems for use with harness containers such as the "MCS|Modular Comfort System" for use with its Sigma II tandem container ("UPT MCS Sigma" or "Accused UPT Product") that infringe one or more claims of the '526 Patent. An Image of an exemplary Accused UPT Product is provided below as Figure 7 (UPT MCS Sigma).



**Figure 7 (UPT MCS Sigma)**
(*see* https://uptvector.com/sigma2/) (last visited July 9, 2026)

32.    As shown in the exemplary images below, UPT distributes, offers for sale, and sells the Accused UPT Product on its website (https://uptvector.com/). For example UPT offers the MCS|Modular Comfort System for use with its Sigma II tandem container on its website:



**Figure 8**
(*see* https://uptvector.com/sigma2/) (last visited July 9, 2026)

33. Further, UPT's website includes a price list showing that UPT is currently offering to sell the Accused UPT Product for $6,950.

12



**Figure 9**
(*see* https://uptvector.com/wp-content/uploads/2026/03/SIGMA-List-006_REV_64.2.pdf) (last visited July 9, 2026)

34.     UPT's website also includes an order form for the Sigma II tandem container, where customers can select the MCS Modular Comfort System for purchase with the Sigma II tandem container:

13

**Figure 10**

(*see* https://uptvector.com/wp-content/uploads/2025/02/Sigma-2-Order-Form_323.pdf) (last visited July 9, 2026)

35.    Upon information and belief, the Accused UPT Product was also demonstrated at the 2025 PIA Symposium in Florida. Exemplary images of the Accused UPT Product are provided below as Figure 11 and Figure 12.

14



**Figure 11**                    **Figure 12**

36.    As shown below, upon information and belief, both the Accused CPS

Product and the Accused UPT Product use the same or substantially the same

weight distribution system.



**Figure 13**
Accused CPS Product



**Figure 14**
Accused UPT Product

37. On May 27, 2025, counsel for Airborne wrote to CPS to provide notice that the CPS MJ System and the CPS TS System infringe the '526 Patent.

38. On May 27, 2025, counsel for Airborne also wrote to UPT to provide notice that the UPT MCS Sigma infringes the '526 Patent.

39. Following various communications and exchanges of information between counsel for the parties, Defendants indicated that they would cease and desist from further manufacture, use, sale, offer for sale, and/or importation of the MCS Modular Comfort System for use with the Sigma II tandem container.

16

40. Despite this representation, however, Defendant UPT has continued to make, use, sell, offer for sale, and/or import the MCS Modular Comfort System for use with the Sigma II tandem container.

41. Further, despite having notice of the '526 Patent, Defendant CPS has continued to make, use, sell, offer for sale, and/or import the CPS TS System.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,899,526 BY CPS

42. Airborne incorporates by reference the allegations in Paragraphs 1-41 of this Complaint as if fully set forth herein.

43. The '526 Patent is in effect and is presumed valid under the Patent Laws of the United States.

44. On information and belief, CPS has infringed and is infringing at least one claim of the '526 Patent under 35 U.S.C. §271 by making (or having made), using, offering for sale, selling, and/or importing in the United States, without authority, the Accused CPS Product, including at least the CPS TS System.

45. Claim 1 of the '526 Patent recites as follows:

A parachute harness container and load distribution vest combination comprising:

a harness container having a front side that is in contact with a jumper's back when the harness container is worn, a main chute and a reserve chute being secured within said container;

harness container straps that are worn across the jumper's shoulders to secure the container in position on the jumper's back;

17

main lift webs connected to the parachute risers to support the jumper during descent; and

a load distributing vest including an upper yoke and a pair of vest straps extending outwardly from the yoke to respective vest strap ends, said upper yoke being attached to the front side of the harness container at a yoke attachment point and said vest straps being in contact with the jumper's shoulders, back and chest, each of said vest strap ends being attached to said main lift webs at a respective vest strap attachment point, a length of said load distributing vest from said yoke to said vest strap ends being less than a distance between said yoke attachment point on the front side of the harness container and said vest strap attachment points on said main lift webs as measured from the front side of the harness container along an inner side of said harness container straps, said load distributing vest length relative to said distance causing load from said harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest,

wherein said vest straps run concurrently with and under said harness container straps and said main lift webs, said vest straps being kept in alignment with said main lift webs by a guide panel on each of said main lift webs through which a respective vest strap passes.

46.    On information and belief, CPS has made, imported, sold or offered to sell the Accused CPS Product. The claim chart below shows how at least independent clam 1 of the '526 Patent reads on the Accused CPS Product, based on information currently available to Airborne and its attorneys. This claim chart is

not intended to limit the scope of Airborne's infringement claim in any way and is intended to be without prejudice to Airborne's ability to assert different or additional claims of the '526 Patent against CPS and/or to apply such claims to the product differently in view of additional information that Airborne and its attorneys may acquire during the course of this litigation.

47.    The Accused CPS Product meets each element of claim 1 of the '526 Patent:

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| A parachute harness container and load distribution vest combination comprising: | *The Accused CPS Product is a parachute harness container and load distributing vest combination.*<br><br><br><br>CPS TS System (*see* https://www.cpsworld.com/wp-content/uploads/2022/11/TS-QR-FINAL.pdf) (last visited July 9, 2026) |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| a harness container having a front side that is in contact with a jumper's back when the harness container is worn, a main chute and a reserve chute being secured within said container; | *The Accused CPS Product includes a harness container having a front side that is in contact with a jumper's back when the harness container is worn.*<br><br>harness container with front side<br><br>*Additionally, the Accused CPS Product has a main chute and a reserve chute secured within the container.* |

20

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| |  CPS TS System (*see* https://www.cpsworld.com/wp-content/uploads/2022/11/TS-QR-FINAL.pdf) (last visited July 9, 2026) |
| harness container straps that are worn across the jumper's shoulders to secure the container in | ***The Accused CPS Product includes harness container straps that are worn across the jumper's shoulders to secure the container in position on the jumper's back.*** |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| position on the jumper's back; | |
| main lift webs connected to the parachute risers to support the jumper during descent; and | *The Accused CPS Product includes main lift webs connected to the parachute risers to support the jumper during descent.*<br> |
| a load distributing vest including an upper yoke and a pair of vest | *The Accused CPS Product includes a load distributing vest including an upper yoke and a pair of vest straps extending outwardly from the yoke to respective vest strap ends.* |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| straps extending outwardly from the yoke to respective vest strap ends, | load distributing vest with upper yoke and vest straps<br><br>vest strap ends |
| said upper yoke being attached to the front side of the harness container at a yoke attachment point and said vest straps being in contact with the jumper's shoulders, back and chest, | *The Accused CPS Product includes a load distributing vest including an upper yoke attached to the front side of the harness container at a yoke attachment point and vest straps in contact with the jumper's shoulders, back and chest.*<br><br>vest straps in contact with shoulders, back, and chest<br><br>upper yoke attachment point |
| each of said vest strap ends being attached to said | *The Accused CPS Product includes a load distributing vest including vest straps with vest strap ends that are attached* |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| main lift webs at a respective vest strap attachment point, | *to the main lift webs at a respective vest strap attachment point.*<br><br>vest strap ends attached to main lift webs |
| a length of said load distributing vest from said yoke to said vest strap ends being less than a distance between said yoke attachment point on the front side of the harness container and said vest strap attachment points on said main lift webs as measured from the front side of the harness | *The Accused CPS Product includes a load distributing vest wherein a length of the load distributing vest from the yoke to the vest strap ends is less than a distance between the yoke attachment point on the front side of the harness container and the vest strap attachment points on the main lift webs as measured from the front side of the harness container along an inner side of the harness container straps, such that the load distributing vest length relative to the distance causes load from the harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest.* |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| container along an inner side of said harness container straps, said load distributing vest length relative to said distance causing load from said harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest, |  distance between the yoke attachment point on the front side of the harness container and the vest strap attachment points on the main lift webs<br><br>length of the load distributing vest from the yoke to the vest strap ends |
| wherein said vest straps run concurrently with and under said harness container straps and said main lift webs, said vest straps being kept in alignment with said main lift webs by a guide panel on each of said main lift webs through which a respective vest strap passes. | *The Accused CPS Product includes vest straps that run concurrently with and under the harness container straps and main lift webs, such that the vest straps are kept in alignment with the main lift webs by a guide panel on each of the main lift webs through which a respective vest strap passes.* |

| Claim 1 of the '526 Patent | Exemplary Accused CPS Product |
|---|---|
| |  guide panel |

48.     Accordingly, CPS has been and still is directly and/or indirectly infringing at least claim 1 of the '526 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §271 by making (or having made), using selling, offering for sale, or importing in the United States the Accused CPS Product, including the CPS TS System.

49.     On information and belief, CPS has had knowledge of the '526 Patent since at least May 27, 2025.

50.     CPS will continue to directly and indirectly infringe, literally and under the doctrine of equivalents, unless enjoined by this Court.

51.     As a result of CPS's infringement of the '526 Patent, Airborne has suffered monetary damages, including without limitation lost profits and licensing

royalties, in an amount not yet determined, has suffered irreparable harm and will continue to suffer irreparable harm in the future unless CPS's infringing activities are enjoined by this Court.

52.     Airborne will be greatly and irreparably harmed until CPS and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf are enjoined by this Court from infringing the '526 Patent, and thus, Airborne is without an adequate remedy at law.

53.     Despite having knowledge of the '526 Patent and the technology it covers, CPS continues to sell the Accused CPS Product. CPS's conduct toward Airborne in connection with its deliberate disregard of the '526 Patent was and continues to be egregious.

54.     Thus, CPS's infringement of the '526 Patent, which is entitled to a statutory presumption of validity under 35 U.S.C. § 282, has been and continues to be deliberate and willful.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,899,526 BY UPT

55.     Airborne incorporates by reference the allegations in Paragraphs 1-54 of this Complaint as if fully set forth herein.

56.     The '526 Patent is in effect and is presumed valid under the Patent Laws of the United States.

27

57.     On information and belief, UPT has infringed and is infringing at least one claim of the '526 Patent under 35 U.S.C. §271 by making (or having made), using, offering for sale, selling, and/or importing in the United States, without authority, the Accused UPT Product, including at least the UPT MCS Sigma.

58.     Claim 1 of the '526 Patent recites as follows:

A parachute harness container and load distribution vest combination comprising:

a harness container having a front side that is in contact with a jumper's back when the harness container is worn, a main chute and a reserve chute being secured within said container;

harness container straps that are worn across the jumper's shoulders to secure the container in position on the jumper's back;

main lift webs connected to the parachute risers to support the jumper during descent; and

a load distributing vest including an upper yoke and a pair of vest straps extending outwardly from the yoke to respective vest strap ends, said upper yoke being attached to the front side of the harness container at a yoke attachment point and said vest straps being in contact with the jumper's shoulders, back and chest, each of said vest strap ends being attached to said main lift webs at a respective vest strap attachment point, a length of said load distributing vest from said yoke to said vest strap ends being less than a distance between said yoke attachment point on the front side of the harness container and said vest strap attachment points on said main lift webs as measured from the front side of the harness container along an inner side of said

harness container straps, said load distributing vest length relative to said distance causing load from said harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest,

wherein said vest straps run concurrently with and under said harness container straps and said main lift webs, said vest straps being kept in alignment with said main lift webs by a guide panel on each of said main lift webs through which a respective vest strap passes.

59.    On information and belief, UPT has made, imported, sold or offered to sell the Accused UPT Product. The claim chart below shows how at least independent clam 1 of the '526 Patent reads on the Accused UPT Product, based on information currently available to Airborne and its attorneys. This claim chart is not intended to limit the scope of Airborne's infringement claim in any way and is intended to be without prejudice to Airborne's ability to assert different or additional claims of the '526 Patent against UPT and/or to apply such claims to the product differently in view of additional information that Airborne and its attorneys may acquire during the course of this litigation.

60.    The Accused UPT Product meets each element of claim 1 of the '526 Patent:

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| A parachute harness container and load distribution vest combination comprising: | *The Accused UPT Product is a parachute harness container and load distributing vest combination.*<br><br>UPT MCS Sigma (*see* https://uptvector.com/sigma2/) (last visited July 9, 2026) |
| a harness container having a front side that is in contact with a jumper's back when the harness container is worn, a main chute and a reserve chute being secured within said container; | *The Accused UPT Product includes a harness container having a front side that is in contact with a jumper's back when the harness container is worn.*<br><br>harness container with front side<br><br>UPT MCS Sigma (*see* https://uptvector.com/sigma2/) (last visited July 9, 2026)<br><br>*Additionally, the Accused UPT Product has a main chute and a reserve chute secured within the container*<br><br>SIZES<br>The Sigma II is now available in two container sizes (12 or 13).<br>• The **Sigma II 12** fits the SG340 main with either the SR340 or SR370 reserve, similar to the Micro Sigma.<br>• The **Sigma II 13** fits either the SG370 or SG395 main and SR370 reserve parachute similar to the Sigma<br><br>*The VR 360 reserve will fit both container sizes* |

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| | (*see* https://uptvector.com/sigma2/) (last visited July 9, 2026) |
| harness container straps that are worn across the jumper's shoulders to secure the container in position on the jumper's back; | ***The Accused UPT Product includes harness container straps that are worn across the jumper's shoulders to secure the container in position on the jumper's back.***<br><br>harness container straps |
| main lift webs connected to the parachute risers to support the jumper during descent; and | ***The Accused UPT Product includes main lift webs connected to the parachute risers to support the jumper during descent.***<br><br>main lift webs |

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| a load distributing vest including an upper yoke and a pair of vest straps extending outwardly from the yoke to respective vest strap ends, | *The Accused UPT Product includes a load distributing vest including an upper yoke and a pair of vest straps extending outwardly from the yoke to respective vest strap ends.*<br><br>load distributing vest with upper yoke and vest straps<br><br>vest strap ends |

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| said upper yoke being attached to the front side of the harness container at a yoke attachment point and said vest straps being in contact with the jumper's shoulders, back and chest, | *The Accused UPT Product includes a load distributing vest including an upper yoke attached to the front side of the harness container at a yoke attachment point and vest straps in contact with the jumper's shoulders, back and chest.*<br><br> |
| each of said vest strap ends being attached to said main lift webs at a respective vest strap attachment point, | *The Accused UPT Product includes a load distributing vest including vest straps with vest strap ends that are attached to the main lift webs at a respective vest strap attachment point.* |

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| | vest strap ends attached to main lift webs |
| a length of said load distributing vest from said yoke to said vest strap ends being less than a distance between said yoke attachment point on the front side of the harness container and said vest strap attachment points on said main lift webs as measured from the front side of the harness container along an inner side of | *The Accused UPT Product includes a load distributing vest wherein a length of the load distributing vest from the yoke to the vest strap ends is less than a distance between the yoke attachment point on the front side of the harness container and the vest strap attachment points on the main lift webs as measured from the front side of the harness container along an inner side of the harness container straps, such that the load distributing vest length relative to the distance causes load from the harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest.* |

34

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| said harness container straps, said load distributing vest length relative to said distance causing load from said harness container to be distributed across the jumper's back, shoulders and chest by the load distributing vest, | <br><br>distance between the yoke attachment point on the front side of the harness container and the vest strap attachment points on the main lift webs<br><br>length of the load distributing vest from the yoke to the vest strap ends |
| wherein said vest straps run concurrently with and under said harness container straps and said main lift webs, said vest straps being kept in alignment with said main lift webs by a guide panel on each of said main lift webs through which a respective vest strap passes. | *The Accused UPT Product includes vest straps that run concurrently with and under the harness container straps and main lift webs, such that the vest straps are kept in alignment with the main lift webs by a guide panel on each of the main lift webs through which a respective vest strap passes.* |

| Claim 1 of the '526 Patent | Exemplary Accused UPT Product |
|---|---|
| | <br>guide panel |

61.    Accordingly, UPT has been and still is directly and/or indirectly infringing at least claim 1 of the '526 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §271 by making (or having made), using selling, offering for sale, or importing in the United States the Accused UPT Product, including the UPT MCS Sigma.

62.    On information and belief, UPT has had knowledge of the '526 Patent since at least May 27, 2025.

63.    UPT will continue to directly and indirectly infringe, literally and under the doctrine of equivalents, unless enjoined by this Court.

36

64.   As a result of UPT's infringement of the '526 Patent, Airborne has suffered monetary damages, including without limitation lost profits and licensing royalties, in an amount not yet determined, has suffered irreparable harm and will continue to suffer irreparable harm in the future unless UPT's infringing activities are enjoined by this Court.

65.   Airborne will be greatly and irreparably harmed until UPT and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf are enjoined by this Court from infringing the '526 Patent, and thus, Airborne is without an adequate remedy at law.

66.   Despite having knowledge of the '526 Patent and the technology it covers, UPT continues to sell the Accused UPT Product. UPT's conduct toward Airborne in connection with its deliberate disregard of the '526 Patent was and continues to be egregious.

67.   Thus, UPT's infringement of the '526 Patent, which is entitled to a statutory presumption of validity under 35 U.S.C. § 282, has been and continues to be deliberate and willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   A judgment in favor of Plaintiff against Defendants;

B.    A judgment that Defendants have infringed and continue to infringe the claims of the '526 Patent;

C.    A judgment that Defendants, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from further infringing the claims of the '526 Patent during its term;

D.    A judgment against Defendants awarding Plaintiff damages suffered by Plaintiff in accordance with 35 U.S.C. § 284 on account of Defendants' infringement of the '526 Patent;

E.    A declaration that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiff of its attorneys' fees incurred in filing this action; and

F.    Such other and further relief as this Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Date: July 14, 2026

Respectfully submitted,

*/s/ Allison M. Stevenson*
Allison M. Stevenson (Bar No. 126620)
allison.stevenson@hwhlaw.com
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, Florida 33602
(813) 506-5134 (Telephone)

Todd R. Tucker (*to be admitted pro hac vice*)
ttucker@calfee.com
Kyle Deighan (*to be admitted pro hac vice*)
kdeighan@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
(216) 622-8200 (Telephone)
(216) 241-0816 (Facsimile)

*Attorneys for Plaintiff Airborne Systems North America of NJ Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 14, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

/s/ *Allison M. Stevenson*

Allison M. Stevenson
*Attorney for Airborne Systems North America of NJ Inc.,*

40

22804881v1